**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHARLES GARNER, # 199287,

       Petitioner,

v.                                                         Case No. 08-CV-12023
                                                         Honorable Nancy G. Edmunds

MILLICENT WARREN,

       Respondent,

_____/

**<u>AMENDED OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*</u>**

**I. INTRODUCTION**

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Charles Garner, currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, through counsel,[1] filed this petition challenging his convictions for (1) armed robbery, MICH. COMP. LAWS § 750.529, and (2) felony firearm, MICH. COMP. LAWS § 750.227b, imposed by a Wayne County, Michigan, circuit court jury. On August 14, 2003, Garner was sentenced to thirty-seven-and-one-half to seventy years in prison for the armed-robbery conviction, to be served consecutively to the mandatory two-year prison term for the felony-firearm conviction. In his *pro se* pleadings, Garner alleges that: (1) trial counsel was ineffective for failing to request the assistance of an identification expert and to object to the admission of dog-tracking evidence, (2) he was denied his constitutional rights to confrontation when

---

[1] In the Court's original opinion and order denying Garner habeas relief, dated November 18, 2010, the Court stated that Garner filed his petition *pro se*. Rather, Garner's habeas petition was filed through counsel, Susan Smith.

the trial court refused to allow a physical demonstration to show how much of the perpetrator's face was covered and refused to allow counsel to cross-examine the police officer about his characterization of a witness's description of him as matching that of the perpetrator, and (3) appellate counsel was ineffective for failing to raise the above-stated issues on direct appeal. For the reasons stated below, the Court will deny the petition. The Court will also decline to issue Garner a certificate of appealability and will deny him leave to proceed on appeal *in forma pauperis*.

## II. BACKGROUND

This case arises because of an armed robbery that occurred on April 21, 2003, in Westland, Michigan, at Hungry Howie's Pizza restaurant. Trial began on August 13, 2003, and concluded on August 14, 2003.

Jessica Clos, an employee at Hungry Howie's, and Andreya Chapman, the Assistant Manager, identified Garner as the man who committed the robbery. Clos testified that Garner entered through an open rear door and held a gun to Chapman's head, telling her to get him the money from the cash register. Clos said she looked at Garner for about ten seconds but was unable to completely see his face because of the gun and because he had a hood over his face. Chapman testified that she was able to see the clothing that he wore but did not see his face. According to the witnesses, Garner then left the restaurant and ran towards an adjacent housing development.

Dennis Spina, a resident of the development and former neighbor of Garner's, testified that Garner ran up to his deck and told him that he was being chased by two black men. Spina's house was about one-half mile from Hungry Howie's. Garner then offered to repay Spina a twelve-dollar debt if he could give him a ride to his mother's house. Spina

2

refused and told Garner to leave. After Garner left, Spina saw police cars in the vicinity and reported Garner's behavior to the police.

Officer Kenneth Percin testified that he received a report of a robbery at Hungry Howie's from dispatch, to which he responded. When he arrived at the scene, he spoke with Clos and Chapman about the robbery. They each gave him a description of the robber. Officer Percin then called for a K-9 unit to track the perpetrator.

The dog tracked a scent to a point about 100 yards from the development where Spina and Garner's mother lived. Officer Percin then received Spina's information about Garner from dispatch and he went to Spina's home. Spina's description of Garner was similar to that of Clos and Chapman. Officer Percin then went to Garner's mother's home but Garner was not there.

Subsequently, around midnight, Officer Percin received information from Garner's ex-wife. He and other police officers went to a house about three blocks from Spina's housing development. Officer Percin told the homeowner he had a warrant for her son. The son was found in an upstairs bedroom and Garner was in another bedroom, behind a bed. Some of the clothes matching the description of the perpetrator were found yet in another bedroom.

At trial, Garner's counsel did not employ an expert witness concerning the reliability of Clos's identification. Counsel also did not object to an improper foundation for the dog-tracking evidence entered by the prosecution. The trial court did not allow Garner's counsel to enter demonstrative evidence showing how much of the perpetrator's face was covered by his hood. Additionally, defense counsel bought a new jacket similar to the one used by the perpetrator, and the trial court did not allow a demonstrative showing of what the

3

perpetrator looked like because there was no proof that the jacket was the same size. The trial court also sustained a hearsay objection to defense counsel's cross-examination of Officer Percin when Percin was asked about Spina's description of Garner.

The jury convicted Garner as stated.

Following his sentencing, Garner filed a direct appeal with the Michigan Court of Appeals, raising the following claims:

> I. The trial court over-emphasized the armed[-]robbery instruction such that the jury could not fairly consider a not[-]guilty verdict. The trial court denied [Garner's] rights to a fair and impartial trial under the Sixth and Fourteenth amendments.
>
> II. Ineffective assistance of counsel denied [Garner] a fair trial.
>
> > A. Trial counsel was ineffective in failing to object to the improperly admitted tracking dog "expert" testimony.
> >
> > B. Eyewitness Clos saw the assailant for a few very stressful and scary moments, during the course of an armed robbery. Trial counsel ineffectively failed to seek the appointment of an expert on identification, or a cautionary instruction on the grave dangers of misidentification.
> >
> > C. Trial counsel failed to timely and properly object when the trial court over-emphasized the armed[-]robbery instruction such that the jury could not fairly consider a not[-]guilty verdict.

On February 3, 2005, the Court of Appeals affirmed Garner's convictions and sentences. *People v. Garner*, No. 251010, 2005 WL 267567 (Mich.Ct.App. Feb. 3, 2005). Subsequently, Garner filed an application for leave to appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claims. On August 30, 2005, the Supreme Court denied the application. *People v. Garner*, 474 Mich. 856, 702 N.W.2d

4

580 (2005).

Garner then filed a post-conviction motion for relief from judgment, pursuant to Mich.Ct.R. 6.500, *et.seq.*, with the trial court, raising the following claims:

> I. The trial court denied [Garner] a fair trial by abusing its discretion in several instances.
>
> II. [Garner] was denied a fair and impartial trial due to ineffective assistance of trial counsel.
>
> III. Appellate counsel was ineffective for failing to raise all previously asserted errors and for failing to properly argue that trial counsel was ineffective for failing to seek an expert or a cautionary instruction.

The trial court denied Petitioner's post-conviction motion. *People v. Garner*, No. 03-5302 (Wayne County Circuit Court, Criminal Division, Nov. 16, 2005). Following, Garner filed an application for leave to appeal the trial court's decision with the Michigan Court of Appeals, raising the same claims. On October 26, 2006, the Court of Appeals denied the application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Garner*, No. 269744 (Mich.Ct.App. Oct. 26, 2006). Garner then filed an application for leave to appeal that decision with the Michigan Supreme Court. On June 26, 2007, the Supreme Court denied the application for the same reason. *People v. Garner*, 478 Mich. 924, 732 N.W.2d 923 (2007).

Garner filed this habeas petition on May 8, 2008, raising the same claims raised in the state courts.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this

Court's habeas review of state-court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.* Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state-court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is

6

whether the state-court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

## IV. DISCUSSION

### A. Claim I–Ineffective Assistance of Counsel

In his first habeas claim, Garner argues that trial counsel was ineffective for failing to seek appointment of an expert on identification and to object to testimony that a K-9 unit had assisted the police in locating him.

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, Garner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* Those two components are mixed questions of law and fact. *See id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must

7

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

The Court of Appeals in addressing and rejecting Garner's claims stated:

> Defendant first contends that counsel was ineffective for failing to object to the tracking dog evidence because a proper foundation for its admission was not established. "Where the admissibility of evidence is disputed, the burden establishing a proper foundation rests with the party seeking admission." The prosecutor did not lay a proper foundation for admission of the evidence, [], presumably because defendant did not object to admission of the evidence. Whether the prosecutor could have laid the proper foundation had a timely objection been raised is impossible to determine from the record. Even if we assume that a proper foundation could not have been laid, defendant has nonetheless failed to establish that he was prejudiced by the admission of tracking[-]dog evidence.
>
> Officer Percin testified that the dog left the store, went north out the alley and wandered around in the vicinity of Newburgh and Palmer, ending up approximately 125 yards from the Mill Point subdivision. The dog did not lead the officers to defendant or to a place the other evidence showed him to have been and did not turn up any evidence from the robbery. Had the jury not heard that the dog followed a track that ended not far from the Mill Point subdivision, it still had evidence that the robber fled into the alley on foot, that one victim positively identified defendant as the robber, and that just about the time police responded to the reported robbery, defendant appeared on foot in the backyard of a friend who lived in the Mill Point subdivision and announced that he had money to pay a debt. Under the circumstances, it is unlikely that had the tracking[-]dog evidence been excluded, the outcome of the trial would have been different.

8

*Garner*, 2005 WL 267567, at *1-2 (citations omitted).

### 1. Failure to Object to the Dog-Tracking Evidence

Garner argues that trial counsel should have objected to the testimony of Officer Percin, who was not a K-9 handler. As the Court of Appeals determined, Officer Percin would have found his way into the Mill Point subdivision without the help of the dog. Chapman was able to testify that she saw Garner leave through the back of the restaurant, and soon thereafter, Officer Percin received the information about Garner provided by Spina. It was Spina's call, and not the K-9 unit, that led Officer Percin to the houses within the subdivision, and eventually to Garner.

With that in mind, the Court concludes that the admission of the dog-tracking evidence was irrelevant, as it did not prejudice Garner's defense. Garner is therefore not entitled to habeas relief on this claim.

### 2. Failure to Request Assistance of Expert Witness

Garner also claims that expert-eyewitness testimony would have had a reasonable probability to change the outcome of his trial. Although Garner's argument has some merit, he cannot prove that the lack of expert testimony would have had a reasonable chance of changing the jury's verdict. What was requested was a general expert, who would have addressed hypothetical instances of eyewitness testimony. The expert would not be able to speak to the specificity of the facts before the trial court.

Rather, trial counsel produced Garner's lineup attorney, who testified that the procedure was unfairly suggestive, that he did not think it was a fair representation, and that he had voiced his objections. Trial counsel's decision to request the testimony of a

witness who had actually been present rather than an expert who could offer only an opinion to hypothetical questions was reasonable trial strategy.

Against that backdrop, the Court finds that an expert would not have created a reasonable probability that the result would have been different. Garner is therefore not entitled to habeas relief regarding this claim.

### B. Remaining Claims

Respondent argues that Garner's remaining claims should be barred by procedural default. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court will therefore address Garner's remaining claims on the merits.

### 1. Right-to-Confrontation Claim

In his post-conviction motion, Garner argued that the trial court denied him his constitutional rights to confrontation, and, therefore to present a defense. Thus, he was denied his rights to a fair trial.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend VI. The Confrontation Clause protects a defendant's literal right to confront witnesses at the time of trial, and a defendant's right to cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985). A trial court has the discretion to limit the scope of cross-examination. *Delaware v. VanArsdall*, 475 U.S. 673, 675 (1986). This includes discretion to impose limits based on concerns about harassment, prejudice, confusion on

the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *VanArsdall*, 475 U.S. at 675; *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999). The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defense might desire. *Fensterer*, 474 U.S. at 20; *Haliym v. Mitchell*, 492 F.3d 680, 701 (6th Cir. 2007).

Here, the trial court, in denying Garner's post-conviction motion, stated: "Defendant alleges that the trial court denied his right to confront Officer Percin. The questions asked by the defense called for hearsay responses. Defendant has a right to confront the witnesses, but must do so within the rules of evidence." *Garner*, No. 03-5302, at *2.

Trial courts have broad discretion as they balance possible prejudice versus probative value. *Boggs v. Collins*, 226 F.3d 728, 742 (6th Cir. 2000). Here, the trial court dismissed this claim because the questions that trial counsel asked Officer Percin called for hearsay. That is a state-law evidentiary issue that is not cognizable in federal court. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

As for the Confrontation Clause issue that Garner argues, the right of a defendant to cross-examine all witnesses against him only extends as far as the rules of evidence allow. The trial court correctly determined that the answers that counsel was hoping to illicit from Officer Percin would have been hearsay. Therefore, the decision of the trial court was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Accordingly, the Court concludes that Garner is not entitled to habeas relief on this

claim.

## 2. Trial-Court-Refusal-to-Allow-a-Physical-Demonstration Claim

The trial court decided this issue on the merits, stating:

> Next, defendant claims abuse of discretion based on the trial court's refusal to allow a demonstration by defense counsel. Counsel admitted that it was a new jacket that he had purchased. Thus, there was no showing that the jacket was the correct size as Sergeant Heater (the person who was to assist in the demonstration). Nor any showing that the demonstration had any tendency to make the existence of any fact of consequence more or less probable. Appellate counsel was not ineffective for failing to raise this issue.

*Garner*, No. 03-5302, at *2.

The trial court dismissed the claim because the demonstration would have been irrelevant. The jacket that counsel wished to use in the demonstration was not the same jacket as the perpetrator supposedly wore, and it could not have been shown that it was the same size and type. Moreover, this claim is also against the evidentiary ruling of a state court and is not cognizable in this proceeding. *Estelle*, 502 U.S. at 67-68; *Seymour*, 224 F.3d at 552.

Both the trial court and the Court of Appeals concluded that the demonstrative evidence was irrelevant. The prosecution had already given a demonstration as to how much of the perpetrator's face was visible, and a further demonstration was not necessary. Therefore, Garner is not entitled to habeas relief on this claim.

## 3. Ineffective-Assistance-of-Appellate-Counsel Claim

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Carpenter v. Mohr*, 163 F.3d 938, 946 (6th Cir. 1998). A criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue

12

on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Additionally, appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. See, e.g., *Mahdi*, 522 F.3d at 638.

As the Court has already determined, Garner's third and fourth claims are without merit, therefore, appellate counsel cannot be deemed to be ineffective because raising those claims in a direct appeal would not have affected the appeal.

Against that backdrop, the Court concludes that the state court's decision was not contrary to, or an unreasonable application of, clearly defined federal precedent. Petitioner is therefore not entitled to habeas relief regarding his ineffective-assistance-of-appellate-counsel claim.

### C. Certificate of Appealability

The Court will also decline to issue Garner a certificate of appealability (COA). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a COA should

issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

The Court concludes that jurists of reason would not find its assessment of the substantive or procedural rulings debatable or wrong. The Court thus declines to issue Petitioner Garner a COA. Nor should he be granted leave to appeal *in forma pauperis*, as any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

## V. CONCLUSION

For the reasons stated, this Court concludes that Petitioner Garner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to issue Garner a certificate of appealability and denies him leave to proceed on appeal *in forma pauperis*.

    s/Nancy G. Edmunds  
    Nancy G. Edmunds  
    United States District Judge

Dated: November 18, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 18, 2010, by electronic and/or ordinary mail.

    s/Carol A. Hemeyer  
    Case Manager